**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X    Case No. 13-CV-0313

CHERIE MEALUS,

                                        Plaintiff,

                        -against-

NIRVANA SPRING WATER N.Y. INC. and MANSUR
RAFIZADEH, *Individually*,

                                        Defendants.
-------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT RAFIZADEH'S MOTION FOR SANCTIONS**


                                        Jesse C. Rose
                                            Of Counsel
                                        Phillips & Associates, PLLC
                                        45 Broadway, Suite 620
                                        New York, NY 10006
                                        (212) 248-7431

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ............................................................................................. i

**TABLE OF AUTHORITIES** .................................................................................. iii

**INTRODUCTION** ...................................................................................................... 1

*1. Plaintiff has a colorable claim that was not brought in bad faith* ..................... 1

*2. Plaintiff is entitled to protection under Title VII and the NYSHRL regardless of criminal charges* ............................................................................................... 2

*3. Plaintiff's Attorneys complied with all discovery requests* ............................... 2

**RELEVANT PROCEDURAL HISTORY** .............................................................. 2

**LEGAL ARGUMENT** ............................................................................................... 6

**I. Defendant's motion is untimely** ........................................................................ 6

**II. Applicable standard of review for Rule 11 motions** ...................................... 7

**III. Applicable standard of review for the Court's inherent power to sanction** ................. 8

**IV. Zealous Representation** .................................................................................... 9

**V. This claim was not brought in bad faith** ....................................................... 10

*1. This lawsuit was not brought as part of an extortionate scheme* ................... 11

*2. Plaintiff's claims had a colorable basis* .......................................................... 11

*3. Plaintiff's counsel's response to Defendant's Rule 11 safe harbor letter was appropriate and Defendant's reaction to that letter shows bad faith* .................. 14

**VI. Plaintiff's counsel should not be sanctioned** .............................................. 15

*1. A reasonable investigation was conducted* ..................................................... 15

*2. Plaintiff's Counsel did not become aware of a bad-faith nature of the complaint* ....... 18

i. Plaintiff's counsel engaged in significant discovery ................................. 18

ii. Defendant's proposal for an investigation is unreasonable ..................... 20

iii. Plaintiff's counsel asked relevant questions at deposition and fully engaged in discovery ........................................................................................ 20

iv. Defendant incorrectly summarizes Plaintiff's arguments at the March 11, 2014 hearing............................................................................................................... 21

v. Additional questions regarding Plaintiff's counsel's reasonable inquiry ................. 22

*3. Plaintiff's Counsel Produced Plaintiffs entire Facebook profile* ................................. 24

**VII. Defendant's requested fees are unreasonable**............................................................... 24

**VIII. Defendant's motion for costs is untimely** ................................................................... 25

**CONCLUSION** ........................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

Baker v. Urban Outfitters, Inc., 254 F. Supp.2d 346 (S.D.N.Y. 2003).............................................. 7

Barber v. Miller, 146 F.3d 707 (9th Cir. 1998) ............................................................... 6

Bus. Guides, Inc. v. Chromatic Communs. Enters., 111 S. Ct. 922 (1991) .................... 7, 8, 15, 18

Calloway v. Marvel Entertainment Group, 854 F.2d 1452 (2d Cir. 1988).................................... 8

Chambers v. NASCO, Inc., 501 U.S. 32 (U.S. 1991) ............................................................ 9, 10

Childs v. State Farm Mut. Auto. Ins. Co., 1994 U.S. App. LEXIS 23297 (5th Cir. La. 1994)..... 19

Colliton v. Cravath, 2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sept. 23, 2008)........................... 15

Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, (U.S. 1990)................................................ 7, 18

Daliessio v. DePuy, Inc., 178 F.R.D. 451 (E.D. Pa. 1998) ...................................................... 7

DeShiro v. Branch, 183 F.R.D. 281 (M.D. Fla. 1998) ......................................................... 7

Eastway Constr. Corp. v. City of New York, 762 F.2d 243 (2d Cir. 1985)............................... 7, 10

Fuerst v. Fuerst, 832 F.Supp.2d 210 (E.D.N.Y., 2011)......................................................... 8

Gordon v. Bd. of Educ., 232 F.3d 111 (2d Cir. 2000) .......................................................... 12

Gordon v. Kaleida Health, 2012 U.S. Dist. LEXIS 75926 (W.D.N.Y. May 29, 2012)................. 8

Gorzynski v. JetBlue Airways Co., 596 F.3d 93 (2d Cir. 2010).............................................. 12

Greenberg v. Hilton Int'l Co., 870 F.2d 926 (2d Cir. 1989) .................................................. 8

Guzzello v. Venteau, 789 F. Supp. 112 (E.D.N.Y. 1992) ...................................................... 7

Hutto v. Finney, 437 U.S. 678 (1978) ............................................................................. 10

In re Pennie & Edmonds LLP, 323 F.3d 86 (2d Cir. N.Y. 2003)............................................. 6

Kamen v. American Tel. & Tel. Co., 791 F.2d 1006 (2d Cir. 1986) ......................................... 8

Kerin v. USPS, 218 F.3d 185 (2d Cir. 2000)...................................................................... 9

Mercury Air Group, Inc. v. Mansour, 237 F.3d 542 (5th Cir. Tex. 2001) ................................. 18

Motown Productions, Inc. v. Cacomm, Inc., 849 F.2d 781 (2d Cir. 1988) ................................ 10

Nassau-Suffolk Ice Cream v. Integrated Res., 114 F.R.D. 684 (S.D.N.Y. 1987) .................... 15, 24

Oliveri v. Thompson, 803 F.2d 1265 (2d Cir. 1986) ......................................................... 9

Revson v. Cinque & Cinque, P.C., 221 F.3d 71 (2d Cir. 2000) ........................................ 9

Ridder v. City of Springfield, 109 F.3d 288 (6th Cir. 1997) ........................................... 6

Rosen v. Thornburgh, 928 F. 2d 528 (2d Cir. 1991) ..................................................... 12

Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323 (2d Cir. 1999) .................................... 11

Schweizer v. Mulvehill, 93 F.Supp.2d 376 (S.D.N.Y.2000) ........................................... 7

Securities Indus. Ass'n v. Clarke, 898 F.2d 318 (2d Cir. 1990) ....................................... 7

United Food & Commercial Workers Union Local No. 115 v. Armour & Co., 106 F.R.D. 345
    (N.D. Cal. 1985) .......................................................................................... 24

Walker v. Smith, 277 F. Supp. 2d 297 (S.D.N.Y. 2003) ................................................. 9

**Statutes & Regulations**

28 U.S.C. § 1927 ......................................................................................................... 1

EC 7-1 ......................................................................................................................... 9

EC 7-19 ..................................................................................................................... 10

Local Rule 54.1(a) ...................................................................................................... 25

Rule 11 .................................................................................................................. 1, 10

<u>**INTRODUCTION**</u>

Plaintiff, Cherie Mealus, by and through her attorneys, Phillips & Associates, Attorneys at Law, PLLC. respectfully submits this Memorandum of Law in Opposition to Defendant Rafizadeh's Motion for Sanctions. Defendant's motion is baseless and is intended to target our office in retaliation for raising question of what we believe to be ethical violations on the part of Defense Counsel during the course of the litigation. This motion is simply the latest outrage in Defense Counsel's repeated attempts to exact retribution on Cherie Mealus, her counsel and even her mother,[1] for having the temerity to file and prosecute a colorable claim. In his motion, Defense counsel attempts to have the court justify the extraordinary remedy of sanctions for this improper purpose and his motion should be denied. Defendants' motion fails to state a proper basis for sanctions under Federal Rule of Civil Procedure ("FRCP") Rule 11, under 28 U.S.C. § 1927 or based on the Court's inherent power. Rather, Plaintiff brought claims for sexual harassment and had her claims dismissed based largely on evidence submitted by third parties presently employed by Defendants. Dkt No 68, pp. 18-21.

Defendant's motion has a clear message: if you sue our client we will seek retribution. In the same way that Ms. Mealus was pursued criminally and in the same way that Defendants actively and secretly used the discovery process in attempting to find cause to bring criminal complaints, they now are attempting to use this sanctions motion to retaliate against Plaintiff, her counsel and send the message that anyone bringing a claim against Defendants will be punished.

1.  *Plaintiff has a colorable claim that was not brought in bad faith*

Defendant's motion and this Court's decision does not demonstrate that Plaintiff's attorneys were aware or should have been aware of any frivolity in Plaintiff's claims or that Plaintiff was not subjected to discriminatory treatment at the hands of Defendants, only that it is

---

[1] Defendants moved to compel answers to deposition questions seeking admsisions of criminal guilt regarding Plaintiff's mother's actions. Dkt. No. 24-1, p. 5.

not actionable. See Dkt No 68. Defendant's proposed standard for a "reasonable inquiry" deviates from this Circuit's standard, is preposterous, and would require such a thorough investigation of any potential client's claims that no attorney would ever be able to meet the standard. Defs. Memo, pp. 11-13. Many sexual harassment cases are "he said she said", as harassers do not typically make sexually suggestive comments openly. Rather, this type of behavior is secretive and often leaves only the victim as a witness.

2. *Plaintiff is entitled to protection under Title VII and the NYSHRL regardless of criminal charges*

Even if Plaintiff is charged with a crime based on comments regarding dirty water contained within her Febuary 9th email, she still had claims of sexual harassment that arose prior to that e-mail. Even if proven, extraneous criminality is no bar to Plaintiff's pursuit of her sexual harassment claims. Subsequent evidence of crime, poor character or lack of candor entirely go to the Plaintiff's credibility rather than the substantive merits of her claims.

3. *Plaintiff's Attorneys complied with all discovery requests*

Defendant never followed the discovery protocols which require a meet and confer take place prior to moving to compel production. After Defendants improperly moved to compel, Plaintiff produced all evidence requested without redaction. Defendant was not prejudiced in any way. Defendant's baseless motion should be denied as being brought in bad faith for an improper purpose and without a basis in fact or law.

## RELEVANT PROCEDURAL HISTORY

Plaintiff Mealus was originally retained by the Derek T. Smith Law Group on or about February 9, 2012. Their office conducted a reasonable inquiry into the Plaintiff's claims. During that inquiry they obtained supporting evidence from a witness which confirmed aspects of Plaintiff's complaint, including stating that she was "called a cunt, screamed at and humiliated", told to "drink out of a hose like a dog" and that she had witnessed Defendant touch Plaintiff's arm and rub her. Exhibit A. Medical documentation was also obtained which demonstrated that

Plaintiff had sought treatment for depression and anxiety due to sexual harassment along with a note stating that Plaintiff should not work at Defendant's factory because of issues she experienced. The Derek T. Smith Law Group sent a claim letter to Defendants in or around February 28, 2012 requesting a response by March 6, 2012. That claim accompanied a draft complaint which was reviewed by the client and was ultimately the basis for Plaintiff's EEOC charge and Federal Complaint.

The file was then referred to this firm in or around March of 2012. The case was initially filed with the EEOC on or about April 2, 2012 with Plaintiff's sworn statement. A Notice of Right to Sue was issued on December 27, 2012 without any decision by the agency. It has come to our attention that a prior firm to the Pertz firm submitted a position statement which was never produced in discovery. That position statement mentions nothing of illegality and attempts to factually refute Plaintiff's claims. Exhibit B. The Complaint was then filed on March 19, 2013 in this Court. Defendants answered on May 14, 2013.

During the course of discovery, Defendants requested relevant portions of Plaintiff's Facebook profile. This office agreed to perform a search and review of the profile, which was conducted using search terms and looking at dates in proximity to events from the suit. That search did not reveal anything which this office found relevant. Without conducting a meet and confer on this issue or even making a demand for the full Facebook profile, Defendants filed a motion to compel and for sanctions. See Dkt. No. 24-1, p. 8. As soon as the full profile was requested through their motion it was produced without redaction. See Dkt. No. 26 ("Plaintiff is willing to produce the entirety of Plaintiff's Facebook profile in an effort to end this dispute. If Defendants had contacted Plaintiff to confer prior to making their motion, this same offer would have been made."). Defendants' motion to compel was the first time that Defendants had requested the full profile. Dkt. No. 24. Plaintiff did not even object to the request in response to

the motion or argue that any portion of the profile should be withheld. This refutes Defendants' claims that this office "knowingly fail[ed] to disclose detrimental information." Defs. Memo, p. 19. Defendant's allegation of purposeful discovery violations is entirely false, malicious and improper given that the record shows that the information was produced without hesitation or objection when it was actually requested.

Prior to and leading up to this motion, Defendant Rafizadeh's counsel had engaged in lengthy correspondence with the District Attorney's office regarding discovery, what would be obtained and what questions would be asked in depositions. Emails with Plaintiff's Counsel were also sent via blind carbon copy to the District Attorney's office. Dkt. No. 47-5. When the District Attorney requested the original files of pictures taken by Plaintiff, Defendants requested production of the original Micro-SD card from Plaintiff's camera as part of a motion to compel. Dkt. No. 24, pp. 4-5. This was despite it never being previously requested. Dkt. No. 26, p. 9 ("Defendants did not request production or inspection of the SD card… Plaintiff will of course produce the SD card for inspection."). Defendants also informed the District Attorney of information regarding prior drug use and prescription drugs in a clear effort to attempt to have criminal charges brought against Ms. Mealus. Dkt. No. 47-5. Incredibly, Defendants even sought to compel a response to a deposition question that had no other purpose but to establish that Plaintiff's mother had scienter for a criminal act. Dkt No. 24-1, p. 5. They further thanked the District Attorneys' office for bringing charges, forwarded transcripts from the depositions and otherwise used all possible information obtained in this civil lawsuit to encourage criminal charges to be brought and pursued against Ms. Mealus. Dkt. No. 47-5.

No notice from the District Attorney's office was provided to Ms. Mealus until she was served with Notice of Arraignment on about January 15, 2014. This office immediately demanded the correspondence filed as Docket Number 47-5. On February 13, 2014, Plaintiff

requested leave to file an Amended Complaint and disqualify Defendant's attorneys due to their having brought criminal charges for actions taken in March of 2012 in response to Plaintiff filing her federal complaint on March 19, 2013. Defendants claim that they first approached the District Attorney's office on July 8, 2013, three days prior to the initial conference and months after filing an Answer in this case. Dkt. No. 47, p. 2. Plaintiff concluded that this was done in direct response to her filing claims and is a violation of N.Y. Rules of Professional Conduct, R. 3.4(e) which prohibits the use of criminal charges to obtain an advantage in a civil matter. Dkt. No. 37, p. 3. Defendants were aware of all of the facts which form the basis of their criminal complaint in March of 2012.

Defendants filed motions for summary judgment on February 15, 2014 and supplemented that filing on February 23, 2014. Dkt Nos. 38, 39, 44. Plaintiff filed her opposition to Defendants' motion on March 10, 2014. Dkt. No. 51, 52, 53. Plaintiff filed late due to circumstances and a misunderstanding but the Court graciously agreed to permit the late filing.[2] Dkt. No. 56. On April 21, 2014, after the motion for summary judgment was briefed and filed, Defendants sent a safe harbor letter under Fed. R. Civ. Pro. 11(c)(2). Defendant's Exhibit 4. Plaintiff responded by addressing each of the issues referenced and made two concessions: Plaintiff agreed only to pursue garden variety emotional damages and she would not pursue any claims relating to the end of her employment. Indeed, this was entirely consistent with Plaintiff's refusal to press claims for termination or constructive discharge in her opposition to summary judgment. Plaintiff's intent to not press such claims was memorialized in a Stipulation which states:

> Plaintiff agrees to dismiss with prejudice and without costs or fees awarded to either party any and all claims relating to the end of her employment with

---

[2] At the time, a subordinate attorney's employment had just ended and Jesse Rose's wife had just given birth to a child. The misunderstanding was to the briefing schedule.

Defendants and forego any claims she may have for lost wages resulting from the end of her employment with Defendants.

Exhibit C, Stipulation. This office electronically signed that Stipulation and stated in the response that it was "already executed by our office." Dkt. No. 70-5, p. 6 of 9. Plaintiff also addressed Defendant Rafizadeh's concerns regarding an objection in response to a Rule 56.1 statement which Plaintiff offered to stipulate to withdraw. Id. p. 5 of 9. Plaintiff then clarified that the water quality issue had nothing to do with Plaintiff's sexual harassment and discrimination claims and that Plaintiff did not intend to introduce anything related to water quality at trial. Id.

Within that same letter, this office stated that "[w]e are open to discussing these matters further if you believe it would be helpful. We are and have been willing to engage in discourse throughout this case and would welcome a good faith telephone conference to discuss the matter." Id. at p. 9 of 9. Defendant Rafizadeh's counsel did not reach out to this office, did not file the signed stipulation with the Court, and did not contact us up until filing the present motion on October 15, 2014, more than five (5) months after our letter was sent. Dkt. No. 70.

<u>LEGAL ARGUMENT</u>

### I. Defendant's motion is untimely

If a party moves for Rule 11 sanctions only "after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission" then the motion can be "disallowed as untimely." In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. N.Y. 2003) (citing Barber v. Miller, 146 F.3d 707, 710-11 (9th Cir. 1998) (Rule 11 sanction disallowed where motion filed after complaint dismissed); Ridder v. City of Springfield, 109 F.3d 288, 295-97 (6th Cir. 1997) ("A party must now serve a Rule 11 motion on the allegedly offending party at least twenty-one days prior to conclusion of the case or judicial rejection of the offending contention"; Rule 11 sanction disallowed where motion filed after summary judgment motion granted); DeShiro v. Branch, 183 F.R.D. 281, 287-88 (M.D. Fla.

1998) (same); <u>Daliessio v. DePuy, Inc.</u>, 178 F.R.D. 451, 452 (E.D. Pa. 1998) (Rule 11 motion disallowed where motion not served on adverse party prior to entry of final judgment) <u>Id</u>.). Here, Defendants sent their safe harbor letter only after the motion for summary judgment was fully briefed and then moved for sanctions after the case was dismissed. Thus their motion is untimely.

## II. Applicable standard of review for Rule 11 motions

"The main objective of [Rule 11] is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses." <u>Bus. Guides, Inc. v. Chromatic Communs. Enters.</u>, 111 S. Ct. 922, 934 (1991) (citing <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 393, 409 (U.S. 1990)). Rule 11 sanctions may be imposed only "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." <u>Eastway Constr. Corp. v. City of New York</u>, 762 F.2d 243, 254 (2d Cir. 1985). Sanctions are unwarranted unless plaintiff's claims have absolutely no chance of success under existing precedents. <u>Baker v. Urban Outfitters, Inc.</u>, 254 F. Supp.2d 346, 360-61 (S.D.N.Y. 2003). "[S]anctions should be sparingly imposed ... and care should be taken to avoid chilling creativity or stifling enthusiasm." <u>Guzzello v. Venteau</u>, 789 F. Supp. 112, 118 (E.D.N.Y. 1992) (citing <u>Securities Indus. Ass'n v. Clarke</u>, 898 F.2d 318, 322 (2d Cir. 1990)). "Rule 11 sanctions are not tied to the outcome of litigation; the relevant inquiry is whether a specific filing was, if not successful, at least well founded." <u>Bus. Guides, Inc.</u>, 111 S. Ct. at 934. Rule 11 sanctions are to be reserved for extreme cases of misconduct." <u>Schweizer v. Mulvehill</u>, 93 F.Supp.2d 376, 413 (S.D.N.Y.2000) (citations omitted).

"In ruling on a motion for sanctions, 'the initial focus . . . should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated in pretrial proceedings. . . .'" <u>Greenberg v. Hilton Int'l Co.</u>, 870 F.2d 926, 934 (2d Cir. 1989) (quoting <u>Calloway v. Marvel Entertainment Group</u>, 854 F.2d 1452 (2d Cir. 1988), cert. granted, 489 U.S. 1009, 109 S. Ct.

1116, 103 L. Ed. 2d 179, 57 U.S.L.W. 3550 (1989)). "Sanctions cannot be imposed for filing a Title VII claim so long as there is 'an objectively reasonable evidentiary basis,' Calloway, 854 F.2d at 1470, for each of the McDonnell Douglas elements." Id. at 934-35. "[A]n attorney is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable." Id. at 935 (quoting Calloway, 854 F.2d at 1470). Further, where information contrary to a plaintiff's claims is largely within the defendants' control an attorney is entitled to rely solely on his client's statements. Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1012 (2d Cir. 1986). An attorney is only required to perform a "reasonable inquiry into the facts" prior to filing a document. Bus. Guides, Inc., 111 S. Ct. at 932.

"It is well established that Rule 11 does not impose a continuing obligation on the presenter to update, correct or withdraw any pleading, written motion or other paper which, when presented, satisfies the requirements of the Rule. Accordingly, there is no obligation to update a pleading, motion or other paper based on new information provided that the document met the requirements of Rule 11 when signed." Fuerst v. Fuerst, 832 F.Supp.2d 210, 219 (E.D.N.Y., 2011) (Internal citations and quotations omitted). Defendant fails to address this standard in their motion and argues for extraordinary relief without proper support.

### III. Applicable standard of review for the Court's inherent power to sanction

"The Supreme Court has recognized that federal courts may exercise their inherent power to assess attorneys' fees as a sanction 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' such as when the party practices a fraud upon the court, or shows bad faith by delaying or disrupting the litigation or hampering a court order's enforcement." Gordon v. Kaleida Health, 2012 U.S. Dist. LEXIS 75926, *7 (W.D.N.Y. May 29, 2012) (quoting Chambers v. NASCO, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). "[B]ad-faith resembles Rule 11's requirement that a signer represent to the court that a filing is not being

presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Id. at *8. The inherent power to sanction only exists "where neither statute nor rule provides for relief." Id. (citing Walker v. Smith, 277 F. Supp. 2d 297, 301 (S.D.N.Y. 2003)). "Moreover, the Second Circuit requires 'clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes' before affirming an award of fees under the bad-faith exception." Id. (quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000); Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986)) (internal quotation marks and brackets omitted). To justify a sanction under the Court's inherent power, the actions complained of must be "so devoid of merit that, together with detailed findings with respect to the [party's] improper motives, a bad faith award would be justified." Kerin v. USPS, 218 F.3d 185, 192 (2d Cir. 2000).

Plaintiff and her counsel have not acted in bad faith. Rather, Plaintiff believed her situation amounted to an actionable claim for sexual harassment. Plaintiff's counsel relied on that belief and statements made by her and another witness in bringing this action. During the course of discovery Defendants successfully obtained evidence to refute those claims to the point that the Court dismissed her claims. No action taken by Plaintiff's counsel can be said to have been made in bad faith, for improper motives, or without proper basis in law. Defendant's motion is entirely unfounded and devoid of merit and should be denied.

## IV.     Zealous Representation

The New York Ethical Code requires that an attorney "represent the client zealously within the bounds of the law." EC 7-1. This "responsibility … derives from membership in a profession which has the duty of assisting members of the public to secure and protect available legal rights and benefits." Id. "[E]ach member of our society is entitled to have his or her conduct judged and regulated in accordance with the law; to seek any lawful objective through

legally permissible means; and to present for adjudication any lawful claim, issue or defense." Id. The duty of a lawyer to a client and the lawyer's duty to the legal system are the same: to represent the client zealously within the bounds of the law." EC 7-19. Rule 11 should be interpreted to "allow[] innovation and zealous representation while punishing 'only those who would manipulate the federal court system for ends inimicable to those for which it was created.'" Motown Productions, Inc. v. Cacomm, Inc., 849 F.2d 781, 786 (2d Cir. 1988) (citing Eastway Constr. Corp. v. New York, 762 F.2d 243 (2d Cir. 1985)). Defendant's motion would undermine the requirement that an attorney zealously represent their client within the bounds of the law by having an attorney judge their client's credibility in response to unrelated issues. Plaintiff's attorneys acted within the bounds of the law in zealously representing Ms. Mealus.

## V. This claim was not brought in bad faith

Defendant's motion does not logically argue that the claims were brought in bad faith. Bad faith is shown when a party "delay[s] or disrupt[s] the litigation or ... hamper[s] enforcement of a court order." Chambers v. NASCO, Inc., 501 U.S. 32, 46 (U.S. 1991) (quoting Hutto v. Finney, 437 U.S. 678, 689, n. 14 (1978)). In effect, "bad-faith … resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper 'is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" Id. at 46 n. 10. Defendant does not argue that Plaintiff brought her case to harass them, but instead to extort them, that her claims were not colorable and that Plaintiff's counsel did not appropriately react to their Rule 11 safe harbor letter, sent after the summary judgment motions were fully briefed. Defs. Memo, pp. 8-11. These arguments are without basis.

*1.   This lawsuit was not brought as part of an extortionate scheme*

Defendant argues that Plaintiff's claims are extortionate. This allegation is not supported by the record. The record shows that, while Plaintiff sent an email including pictures of dirty water samples while requesting compensation prior to her finding an attorney, she did not at any point after that initial email or during the course of this lawsuit act to use those pictures or similar arguments in any attempt to gain a settlement. Indeed, the record shows that the timeline forwarded to Plaintiff's attorney[3] did not include anything about dirty water samples and nothing in this lawsuit relates in any way to dirty water samples. Rather, Plaintiff brought claims for sexual harassment relating to interactions she had with Defendant while employed by Defendant. While Defendants have ensured that any illegality in sending that letter will be thoroughly investigated, through ethical means or otherwise, that does not alter the fact that Plaintiff's lawsuit did not include any similar or related request or allegation. Even if Plaintiff is charged with a crime for her claims regarding dirty water, she still had viable claims for sexual harassment which were not barred by those allegations.

*2.   Plaintiff's claims had a colorable basis*

Plaintiff's allegations, if proven, would have supported her claims for harassment and retaliation under Title VII and the NYSHRL. Those claims were supported by a witness and evidence as well as her own testimony which provided a colorable basis to bring and prosecute Plaintiff's claims. A claim has a colorable basis if there is some basis to subjectively believe in a case's merits. Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 340-341 (2d Cir. 1999). Even where that evidence is based on "conceded misrepresentations" and bad advice, a claim will only lack a colorable basis if it can be proven that there is "an absence of genuine belief in

---

[3] This timeline, forwarded to Plaintiff's attorney when she first sought representation, did not include any allegations about dirty water. This was only produced during discovery because Plaintiff's counsel learned that it had been shared with a third party, demonstrating that Plaintiff's counsel has acted ethically and was forthright in discovery.

the validity of the action." Id. at 341. A claim under Title VII for a hostile work environment on account of gender requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Gorzynski v. JetBlue Airways Co., 596 F.3d 93, 102 (2d Cir. 2010) (quotation omitted). To state a *prima facie* claim of retaliation, a plaintiff must allege "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." Gordon v. Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (quotation omitted). Plaintiff's Complaint adequately pleads a colorable basis to pursue these claims. The testimony of a victim of discrimination is sufficient to proceed on a case for discrimination because these claims are often based on exchanges which only the harasser and the victim are present. Courts repeatedly recognize that there will be no "smoking gun" in an employment case. The Second Circuit, in Rosen v. Thornburgh, 928 F. 2d 528 (2d Cir. 1991) noted that "[a]n employer who discriminates is unlikely to leave a 'smoking gun,' … attesting to a discriminatory intent." Id. at 533. Instead, in employment cases a plaintiff will often have to establish a case by relying on circumstantial evidence and their own testimony.

The Complaint in this matter alleges that Defendant would walk up behind Plaintiff and rub her hand, stroke her arm and slip her money. Complaint ¶ 20. She alleged that Defendant grabbed her arm and "asked her 'do you like to suck it?'" Complaint ¶ 24. Plaintiff alleged that around this time she complained about her harassment to her supervisor who responded to her complaint by sharing inappropriate jokes about her throughout the workplace. Complaint ¶¶ 25-27. She alleged that coworkers would then joke that Defendant would "give [her] a hundred bucks if you suck it" and was asked frequently if she "like[d] to suck it?" Complaint ¶ 27. She

alleged that Defendant touched her back, hand and arm and then would make her bend over so he could watch. Complaint ¶ 29. She alleged that he asked her to meet him in his bedroom where he felt her stomach and left his pants unbuttoned. Complaint ¶¶ 31-32. She alleged that when she refused to engage in sex with Defendant that he called her derogatory names and offered her money. Complaint ¶¶ 33-34. She alleged that after numerous requests for dates and to go out on outings she was forced to "hide under her desk or behind a filing cabinet to avoid Defendant." Complaint ¶¶ 35-41. She alleged that Defendant told her about a joke involving "a man who put multiple cigars up his anus and enjoyed it." Complaint ¶ 42. She also alleged that she was subjected to emotional damage due to this harassment which caused her to be sick. Complaint ¶ 43. This conduct was alleged to have permeated the work place and to have infected the work place. Complaint ¶¶ 46-47. She also alleged that she was constructively discharged by Defendant after being "physically and emotionally unable to withstand the constant unlawful abuse." Complaint ¶¶ 51-53.

Thus, Plaintiff plead that she was subject to a hostile work environment which was severe and pervasive on account of sexual harassment and her gender. She further plead that she complained about such treatment to her supervisor (protected activity and employer knowledge), was subject to additional ridicule (adverse employment action), and that the ridicule directly related to her complaint (causal connection). Thus, Plaintiff plead a colorable basis that she was subject to discrimination and retaliation under Title VII.

Defendants' argument does not address Plaintiff's pleading, and rather claims that the "colorable basis" should assume knowledge of every fact available after the close of discovery. See Defs. Memo, pp. 9-10. Indeed, Defendant's only claim which could be considered to rationally argue that Plaintiff did not have a colorable basis to pursue her claims is the unsupported allegation that she "invented this story on the night she left her job." Defs. Memo, p.

10. The Court did not find that Plaintiff fabricated her claims as part of its decision and Defendants have not offered direct proof of such a claim, only arguing by inference that they believe it must have been fabricated based on the email sent on February 9, 2012. Dkt. No. 68, Decision and Order. This does not meet the high standard for a showing that Plaintiff or her counsel lacked a colorable basis to pursue her claims.

### 3. Plaintiff's counsel's response to Defendant's Rule 11 safe harbor letter was appropriate and Defendant's reaction to that letter shows bad faith

Defendant's section regarding Plaintiff's counsel's response to their safe harbor letter effectively seeks to justify the fact that they failed to respond to Plaintiff's letter, counter-sign a proposed stipulation, and otherwise fail to take any action until a decision had been rendered on Defendants' motion for summary judgment. Defs. Memo, p. 11; Exh. C, proposed stipulation. Their motion further ignores the relevant standard for Plaintiff's counsel's actions at that point in the litigation. "It is well established that Rule 11 does not impose a continuing obligation on the presenter to update, correct or withdraw any pleading, written motion or other paper which, when presented, satisfies the requirements of the Rule. Accordingly, there is no obligation to update a pleading, motion or other paper based on new information provided that the document met the requirements of Rule 11 when signed." Fuerst, 832 F.Supp.2d 219 (Internal citations and quotations omitted). Defendant would only need to review Plaintiff's opposition to their summary judgment motion to recognize that Plaintiff did not continue to pursue any claims regarding the end of Plaintiff's employment. See Dkt. No. 51 (there is no mention of a constructive discharge claim or termination claim). Plaintiff did not pursue any claim when the claim was no longer colorable, even prior to Defendant's Rule 11 safe harbor letter. Now, however, Defendant would like the Court to review Plaintiff's and Plaintiff's counsel's actions throughout the litigation with the full benefit of hindsight. This is not a permissible basis for sanctions and the motion should be denied. Bus. Guides, Inc. v. Chromatic Communs. Enters.,

111 S. Ct. 922, 934 (1991) ("Rule 11 sanctions are not tied to the outcome of litigation; the relevant inquiry is whether a specific filing was, if not successful, at least well founded.").

## VI. <u>Plaintiff's counsel should not be sanctioned</u>

### 1. *A reasonable investigation was conducted*

Defendant's proposed standard for reasonable inquiry would require any attorney being retained to represent a plaintiff to obtain all medical records, interview every possible witness, review all prior testimony, and visit the work site to interview the defendant's current employees. This standard is absurd. Plaintiff's counsel performed a reasonable investigation into Plaintiff's claims prior to bringing suit. The "courts apply an objective standard of reasonableness" in evaluating a motion for Rule 11 sanctions. <u>Colliton v. Cravath</u>, 2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sept. 23, 2008) (citing <u>Bus. Guides, Inc.</u>, 498 U.S. 533, 550-51 (1991)). According to Defendant's authority, "[w]hat constitutes reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading . . . . whether the pleading . . . . was based on a plausible view of the law; or **whether he depended on forwarding counsel or another member of the bar.**" <u>Nassau-Suffolk Ice Cream v. Integrated Res.</u>, 114 F.R.D. 684, 689 (S.D.N.Y. 1987) (quoting *Advisory Committee Note to 1983 Amendments*) (emphasis added). While Defendant insists Plaintiff's counsel's inquiry was not reasonable "in light of the volume of available evidence that contradicted Plaintiff's assertions," Defendant does not state what evidence was available prior to the initiation of this lawsuit and discovery was conducted. Defs. Memo, p. 12. The evidence contemplated by the court in <u>Nassau-Suffolk Ice Cream</u> was readily available to the attorney in documentary form demonstrating that the plaintiff had not purchased the ice cream machines at issue from the defendant moving for sanctions. <u>Id</u>. at 690 (while the attorney examined "two large cartons" of documents they could cite only evidence that the defendant may have originally shipped the machines but there was no factual basis for the

claim.). Indeed, in that case there was no indication of any economic tie between the plaintiff and defendant. Id. Thus, because the attorney had no basis to file the lawsuit based on available documents which actually contradicted the complaint that was filed, a sanction was appropriate.

Here, Plaintiff's first attorney, the Derek T. Smith Law Group, performed an investigation, obtained a written account from a witness, and drafted a complaint which largely detailed private interactions between Plaintiff and Defendant Rafizadeh for which is no documentary proof. Plaintiff's counsel is entitled to rely on the investigation done by the Derek T. Smith Law Group in bringing these claims. See *Advisory Committee Note to 1983 Amendments* (stating that an attorney may rely on representations by a referring law office or other member of the bar.). No witness exists other than the Plaintiff and Defendant for a majority of Plaintiff's allegations. Plaintiff produced medical documentation which demonstrated significant emotional damages. While Defendant does not cite any specific evidence Plaintiff's counsel could have obtained prior to initiating the lawsuit, his attorneys do list five items which they claim Plaintiff's counsel should address. Each of these directly refutes Defendant's motion.

The first asks when Plaintiff's counsel reviewed Plaintiff's medical records. It is our understanding that the medical records originally produced in the matter were obtained as part of the initial investigation and were produced prior to obtaining any records directly from medical providers. Defendant does not claim that any medical records would have disproven Plaintiff's claims.

The second asks what witnesses were contacted. As previously stated a witness, Ms. Gorczyca, provided written documentation of harassment and hostility she underwent and witnessed. Other witnesses working for Defendant or for whom Plaintiff did not have contact information were not contacted. That is because their contact information was not in our possession. As discovery progressed, information was obtained from some witnesses and others

were deposed by Defendants. Regardless, there was no information cited by Defendant or that was available at the time which a reasonable inquiry would have uncovered which would disprove Plaintiff's claims of sexual harassment.

The third asks what "prior sworn testimony" counsel evaluated before "suing the case." Defs. Memo, p. 13. Our office was unaware of any such testimony and Defendant does not cite any such testimony. Regardless, the initial investigation performed by Plaintiff's prior counsel did not reveal any contrary prior statements.

The fourth asks for what "documentary evidence" was reviewed before "suing the case." Id. We again refer to the document obtained by a witness and medical documentation detailing that Plaintiff was subject to emotional distress because of her employer. Defendant again fails to cite any documents which would have been available at the time the Complaint was filed which would refute Plaintiff's claims.

The Fifth asks whether Plaintiff's counsel visited the work site, hired an investigator to go to the work site or conducted interviews of Defendant's employees. While it is our understanding that the Derek T. Smith law firm did not conduct such an investigation, that type of extensive pre-suit discovery would so far exceed a reasonable inquiry and likely draw the ire of defendants throughout the district who now would have to deal with investigators and attorneys visiting their place of business seeking information about a former employee's work situation.

Defendant is looking to shift the burden of litigation through improper means and their motion should be denied. Bus. Guides, Inc. v. Chromatic Communs. Enters., 111 S. Ct. 922, 934 (1991) ("The main objective of [Rule 11] is not to reward parties who are victimized by litigation." Id. (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 409 (U.S. 1990))).

Defendant mentions without explanation that Plaintiff asserted damages in the amount of $2,003,042. Defs. Memo, p. 13. While this was never done in a writing which was filed with the Court, as would be required for a Rule 11 sanction, this was the level of damages included by Plaintiff in her Rule 26(a) disclosures. Whether this was unreasonable or not, Defendant fails to address that at the beginning of the lawsuit Plaintiff had medical records showing physical and emotional damages which could have justified a request of such an amount from a jury. Further, if Plaintiff had proven that Defendant Rafizadeh had sexually harassed her then Defendants could have been subject to punitive damages and a demand in that amount would have been requested from a jury. When those claims were deemed excessive, Plaintiff stopped pressing them and offered such a representation in writing. Dkt. No. 70-5. Thus, Defendant is explicitly attempting to hold Plaintiff's counsel to a very high standard using information which was only obtained during the course of discovery and Defendant's motion should be denied.

2. *Plaintiff's Counsel did not become aware of a bad-faith nature of the complaint*

i. <u>Plaintiff's counsel engaged in significant discovery</u>

Defendant's attempt to couch their motion in ethical terms is unavailing and underscores the true reason that this motion is being made: retaliation. Plaintiff claims and continues to claim that she did not assert this lawsuit as part of a criminal scheme, to harass Defendants or otherwise for an improper purpose. Defendant's caselaw works against them by showing how baseless their motion really is. <u>Mercury Air Group, Inc. v. Mansour</u>, 237 F.3d 542 (5th Cir. Tex. 2001) involved a completely baseless claim brought by an attorney who had previously brought "similar frivolous lawsuits in other jurisdictions." <u>Id</u>. at 548. The claim there was brought, admittedly by the plaintiff, without any proper basis and with the hope that in discovery they would uncover evidence to support the claim. <u>Id</u>. at 548-49. This is a far cry from Plaintiff's claim which was supported by Plaintiff's testimony and that of a witness. Plaintiff maintains that

she was subjected to this sexual harassment and there is no direct evidence which refutes those claims other than testimony of other individuals who are and were employed by Defendants.

Similarly, Childs v. State Farm Mut. Auto. Ins. Co., 1994 U.S. App. LEXIS 23297 (5th Cir. La. 1994) also contradicts Defendant's motion. In that case, the defendants submitted proof of prior fraudulent claims by the plaintiff, up to twenty (20) insurance policies taken out in a manner which supported a finding of fraud, proof of misrepresentations and omissions to hide those policies, and testimony from an investigating officer and three (3) expert witnesses which "seriously challenged whether the accident could have occurred as [the plaintiff] claimed." Id. at *17-18. The Fifth Circuit district court concluded that there was "clear and overwhelming" evidence of fraud. Id. at *18. This evidence of fraud directly refuted the plaintiff's claims was not investigated in any way by plaintiff's attorney who did not serve "any interrogatories, requests for production or requests for admission" did not "conduct a single deposition" or hire an expert to refute the defendant's three experts. Id. at *20. The court justifiably found that the plaintiff's attorney conducted no discovery whatsoever other than to speak with his client and the alleged co-conspirators to determine if they denied the allegation of fraud. Id. at *19-20.

Here, Plaintiff conducted significant discovery. Plaintiff served three (3) separate sets of document requests, a set of interrogatories, took Defendant Rafizadeh's and his brother's depositions, served subpoenas for phone records, and served HIPAA releases to Plaintiff's medical providers. Plaintiff sought witnesses who would support her claims, albeit unsuccessfully. This discovery was intended to find information to support Plaintiff's claims and dispute their main defense: that Plaintiff was not credible. Defendant would have this Court decide that when Plaintiff's credibility was tarnished, our office should have immediately disbelieved every representation she made. Plaintiff's February 9, 2012 email to Defendant does not remove the zealous representation requirement and replace it with a requirement that all

statements by Plaintiff be distrusted. No evidence was presented in discovery which conclusively showed that Plaintiff was not sexually harassed or treated in a manner that could be seen as sexual harassment. Rather, the Court found that Plaintiff was not disturbed by that behavior and that she joined in it. This is a far cry from establishing sanctionable conduct.

        ii.    <u>Defendant's proposal for an investigation is unreasonable</u>

Defendant proposes that Plaintiff should have interviewed an unspecified number of present employees of Defendant Nirvana without delineating why they should be contacted other than the fact that Defendants provided statements from them in opposition to Plaintiff's claims. It was reasonably concluded by this office that those individuals would testify as to what was stated in their affidavits and determined that contacting them via telephone would likely not be productive. That was reasonable under the circumstances.

Defendant also seems to indicate that when the witnesses listed by Plaintiff as having knowledge of her claims did not provide supporting testimony, Plaintiff was required to move to dismiss her claims unilaterally. While that testimony certainly detracted from the likelihood of succeeding at trial, it is hardly grounds to disbelieve everything Plaintiff alleged. There are many cases which proceed to trial based solely on the testimony of the plaintiff because the acts complained of occurred only in the presence of one harasser and one victim.

        iii.    <u>Plaintiff's counsel asked relevant questions at deposition and fully engaged in discovery</u>

Defendant further complains that Plaintiff asked Defendant Rafizadeh questions about his sexual history as it was described in his autobiography. This was a reasonable inquiry as Defendant Rafizadeh describes his engaging in sex at brothels and other actions which would support the conclusion that he views women disparately to men. He also uses terms like "peasant" which could reasonably be seen as a negative view of those who work in subordinate roles within his company. That questioning was not conducted in malicious fashion and was

reasonable given the allegations Plaintiff made as well as colorful sexual exploits presented as fact in Defendant Rafizadeh's autobiography.

Further, the insinuation that this office did not attend the subpoenaed depositions is entirely unfounded. Plaintiff's counsel did not travel the full distance to Oneida County each time Defendants deposed a third party witness, but took on the expense of providing competent counsel to represent Plaintiff's interests. One of those attorneys is the president of the Oneida County Bar Association. The costs of local counsel were entirely born by this office as part of Plaintiff's representation and our evidence of the seriousness with which we view Plaintiff's claims. To infer that our office was disinterested in those witnesses' testimony is not founded in any fact and is a malicious false accusation meant to disparage this office in furtherance of Defendant's bad faith motion for sanctions.

iv.     <u>Defendant incorrectly summarizes Plaintiff's arguments at the March 11, 2014 hearing</u>

Defendants blatantly attempt to mislead the Court regarding what occurred at the hearing on Plaintiff's motion to amend her complaint and disqualify Defendant Rafizadeh's counsel. Defendant's counsel purposefully attaches only an excerpt of the proceeding. Exh. D, full transcript of hearing from March 11, 2014. Rather, and contrary to Defendant's claims, Plaintiff's counsel believed that Defendants had gone to the police in 2012 and that no investigation was ongoing. Exh. D, p. 4:8-15. Defendant then presents testimony out of order to insinuate that this office deemed the accusation that Plaintiff was defrauding Defendants "laughable." Defs. Memo, p. 18. This misquotes the record which shows that this office thought the allegation that the lawsuit itself was extortionate was absurd and Defendants were simply alleging criminality as a tactic. Exh. D, pp. 4:16-5:1. Plaintiff's Counsel has not at any point attempted to use the litigation process for anything other than proper purposes.

Defendants then claim that Plaintiff should have then stayed the civil proceeding while the criminal action was conducted. This argument has no merit because all discovery had been complete and the damage had been done. The information obtained by Defendants during discovery for the sole purpose of bringing criminal charges was already obtained and forwarded to the District Attorney's office. At that point, to stay the civil matter would have been pointless.

In addition, Defendant attempts to blame Plaintiff's counsel for not discovering the ongoing investigation by the District Attorney being conducted through Defendant's counsel's office. This is irrational. It was assumed if an investigation was ongoing, Plaintiff would have been informed in a way other than an off-hand comment by Defendants' counsel in a conference. After reviewing Defense counsel's e-mails with the D.A., Magistrate Judge Peebles determined that, while the evidence produced caused the "hair on the back of [his] neck" to move "up a little bit," this was a matter which would be more appropriately brought to "the appropriate grievance committee." Exh. D, p. 34:4-19.

v.      Additional questions regarding Plaintiff's counsel's reasonable inquiry

Defendant lists an additional five (5) questions for Plaintiff's counsel about what investigation was performed. Their sixth question asks for what information was obtained from witnesses during the course of the litigation. This office contacted Ms. Gorczyca, as the Court knows, along with Plaintiff's mother. We attempted to contact several other witnesses listed by Plaintiff but were unable to obtain a written statement or other evidence supporting Plaintiff's claims. Plaintiff also reached out to potential witnesses without success.

Their seventh question asks what investigation was done in response to statements obtained by three witnesses regarding an alleged "premeditated plan to blackmail" Defendants. Defs. Memo, p. 18. When these were obtained we consulted with Plaintiff. There was no further action which could be taken at that point other than to depose the individuals which we deemed

would have been an unnecessary escalation given that the claims did not relate to Plaintiff's sexual harassment complaint. Our office has not been involved with and remains disinterested in the allegations regarding Defendant's water quality. Plaintiff maintains that she had concerns and Defendants denied those concerns. This is not relevant to Plaintiff's sexual harassment claims.

The eighth question asks what investigation was done in relation to the email sent on February 9, 2012 and the email received by our office. Plaintiff provided a rational explanation for this at the time which would not have required us to cease representation.

The ninth question seeks to know when our office found out that Ms. Gorczyca was "Plaintiff's best friend and a convicted felon." Defs. Memo, p. 19. This office was aware that Ms. Gorczyca was a friend of Plaintiff's, as is typical when someone is willing to support a case of harassment. We became aware that she may have a criminal background when Defendants brought this to our attention. As a matter of practice, third party witness's criminal records are significantly less important than their candor. Her statement was not significantly impeached and the allegations she made were limited, reasonable, not farfetched or in any way unbelievable. They appeared to support Plaintiff's allegations to the extent that she witnessed them.

The tenth question asks what investigation was performed "to confirm or deny the allegation of criminality stated in Defendants' Answer." Defs. Memo, p. 19. This effectively is the same investigation which was done to ensure that Plaintiff's claims were well founded. An email asking for settlement of a sexual harassment complaint along with what Defendants call an extortionate email does not require an attorney to suddenly disbelieve their client. Indeed, this office did not stop believing Plaintiff because of that email. If and when a client's claims are found to be baseless this office ceases representation as soon as practicable. It was our determination that the email, while certainly affecting Plaintiff's credibility, did not destroy it. The email attached to Defendant's answer did not prove that she was not sexually harassed.

### 3. *Plaintiff's Counsel Produced Plaintiffs entire Facebook profile*

This office did not purposefully fail to produce evidence during discovery. All discovery requirements were met. The Facebook profile was reviewed using search terms and on relevant dates. Almost immediately after being asked for the complete profile it was downloaded and produced. There was no prejudice to Defendants. It would have been produced earlier if Defendants had requested it. Rather than having a meet and confer Defense filed a motion to compel. No evidence was ever purposefully concealed and Plaintiff did not even oppose Defendants' motion to compel production of the Facebook profile,which had never been requested prior to their motion to compel and for sanctions. Any motion to sanction Plaintiff's attorney due to these discovery issues was already denied by the Court in response to that motion and is improper given that there was no prejudice. The record directly contradicts Defendant's claim that any evidence was intentionally concealed.

### VII.    **Defendant's requested fees are unreasonable**

Even if Plaintiff or her counsel acted unreasonably, a Rule 11 safe harbor letter was not sent until after the close of discovery and the motion for summary judgment was fully briefed. As such, to request costs and fees for the entirety of the litigation is excessive and indicative of their intent to shift the burden of the costs of litigation to Plaintiff after successfully defending against her claims. "Rule 11 authorizes only 'reasonable' fees, not necessarily actual fees." Nassau-Suffolk Ice Cream v. Integrated Res., 114 F.R.D. 684, 692 (S.D.N.Y. 1987) (quoting United Food & Commercial Workers Union Local No. 115 v. Armour & Co., 106 F.R.D. 345, 349 (N.D. Cal. 1985)). If the Court did find that Plaintiff or her counsel acted in a sanctionable manner, the sanction should be limited to those fees incurred after Defendant served its Rule 11 safe harbor motion. This would be significantly lower than entire cost of defense and at most would include the fees associated with their present motion which was filed after the case had already been dismissed.

## VIII. __Defendant's motion for costs is untimely__

The Northern District of New York's local rules provides that in order to obtain costs, a prevailing party must "file, within thirty (30) days after entry of judgment, a verified bill of costs." Local Rule 54.1(a). This deadline is not extended by motion practice. Id. As such, since Defendants did not submit the appropriate bill of costs to the Clerk within thirty (30) days of the Entry of Judgment they cannot now request costs as the prevailing party.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Rafizadeh's Motion for Sanctions in its entirety and order such other and further relief as this Court may deem just and proper.

Dated: New York, New York
        November 3, 2014

**PHILLIPS & ASSOCIATES
ATTORNEYS AT LAW, PLLC**

　　/s/Jesse C. Rose　　　　
Jesse C. Rose
        Of Counsel
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, NY 10006
(212) 248-7431
