**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CHERIE MEALUS,**

                              **Plaintiff,**

        **vs.**                                   **7:13-cv-313**
                                                  **(MAD/DEP)**

**NIRVANA SPRING WATER N.Y. INC.; and**
**MANSUR RAFIZADEH, individually,**

                              **Defendants.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**PHILLIPS & ASSOCIATES,**                 **JESSE C. ROSE, ESQ.**
**ATTORNEYS AT LAW, PLLC**
45 Broadway, Suite 620
New York, New York 10006
Attorneys for Plaintiff

**PERTZ & PERTZ, PLLC**                     **RICHARD PERTZ, ESQ**.
12280 Rt. 365
Remsen, New York 13438
Attorneys for Defendant
Mansur Rafizadeh
**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiff commenced this action pursuant to Title VII of the Civil Rights Act of 1964

("Title VII") and the New York State Human Rights Law ("NYSHRL"). _See_ Dkt. No. 1.  On

February 15, 2014, Defendants filed motions for summary judgment.  In a September 16, 2014

Memorandum-Decision and Order, this Court granted Defendants' motions for summary

judgment. _See_ Dkt. No. 68.

Presently before the Court is Defendant Mansur Rafizadeh's motion for sanctions against

Plaintiff and her counsel.

### II. BACKGROUND

Defendant Nirvana Spring Water N.Y. Inc. ("Nirvana") is a drinking water bottling company with its principal place of business in Forestport, New York. *See* Dkt. No. 53 at 1. Defendant Mansur Rafizadeh, age eighty-three, serves as the chairman of the board of directors. Plaintiff Cherie Mealus was an employee at Nirvana from June 2004 through March 2005. After being hired and rehired numerous times, Plaintiff worked at Nirvana from March of 2009 until February 8, 2012.

On January 10, 2012, Barrett Paving Materials, Inc. received an application for employment from Plaintiff. *See* Dkt. No. 53 at 5. On February 3, 2012, Plaintiff informed her supervisor that she had obtained employment at Barrett Paving and would be leaving her job at Nirvana as of February 17, 2012. Less than a week later, on February 8, 2012, Plaintiff was informed by Barrett Paving that they would not be hiring her after all. On the evening of February 8, 2015, the topic of Plaintiff's alleged sexual harassment appeared for the first time in Plaintiff's correspondence with the person she blamed for the loss of her job opportunity with Barrett Paving. *See* Dkt. No. 38 at 11; Dkt. No. 53. Plaintiff proceeded to compose an email listing "a few examples of personal harassment and sexual harassment by Mansur." *See* Dkt. No. 38-2 at 2. After providing eight examples, Plaintiff stated as follows:

> My lawyer is ready to proceed with a very public sexual harassment
> suit against Mansur and Nirvana ... Also I have about a hundred or
> so pictures of dirty micro tests from the Lab. I have addresses of all
> the states you send water and will send the pictures to all the
> companies you bottle water for and all the state health departments.
> That could be very costly to your company. I will go public as
> well, take the pictures to television stations, newspapers, post all the
> pics on facebook and myspace and have all my friends repost and I
> have friends in all states except Hawaii which that one done [sic]
> matter anyway. . . . I do not want to hear back from you and
> anything I do hear back from you can and will be used in my
> lawsuit if I proceed with it. My lawyer told me to inform you of
> that. All I am asking is that you don't deny my unemployment and
> want a settlement in the amount of $5000, 1 thousand per year of

service.  I want that within on[e] week from today or this all goes public.  I will be sending the pictures as well so you know I am not lying about having them.  My lawyer is prepared to sue for way more than 5000 for the treatment I endured while employed at Nirvana for almost 5 years. . . .  I want unemployment, the small settlement and my last paycheck and then I will go away forever and you will never hear from me again, otherwise me and 2 others are prepared to go ahead with a very public sexual harassment lawsuit.[1]

During Plaintiff's employment with Nirvana, several of her colleagues witnessed her taking photographs of water samples from the lab that showed contamination.  According to Plaintiff's supervisor Leo Hellinger, in substance, Plaintiff said "[i]f anything happened, if I got fired or if I needed a job later, this would be an insurance policy to get back in.  She said I have a relative to whom I could show this and have this place shut down."  *Id.*  During her deposition, Plaintiff indicated that she took the pictures because she "just wanted to have [them] handy" and because "[s]omeone has got to shut that place down."  *See* Dkt. No. 38-3 at 179.

Plaintiff originally retained the Derek T. Smith Law Group on or about February 9, 2012. *See* Dkt. No. 71 at 7.  Plaintiff argues that "their office conducted a reasonable inquiry into Plaintiff's claims," including obtaining supporting evidence from a witness which "confirmed aspects of Plaintiff's complaint," such as "stating that she was 'called a cunt, screamed at and humiliated,' told to 'drink out of a hose like a dog,' and that she had witnessed Defendant touch Plaintiff's arm and rub her."  *Id.*  Further, Plaintiff alleges that medical documentation was also obtained, which demonstrated that Plaintiff sought treatment for depression and anxiety due to

---

[1]Although Plaintiff indicates in the email that she had consulted with an attorney who was ready to proceed with a sexual harassment suit against Defendants, during her deposition Plaintiff admitted that she did not, in fact, have an attorney who was ready to proceed with her lawsuit. *See* Dkt. No. 38-2 at 2-3; *see also* Dkt. No. 38-3 at 164-65.

sexual harassment, accompanied by a note stating that Plaintiff was advised against working at

Defendant's factory due to issues she experienced. *See id.* at 7-8.

After the Derek T. Smith Law Group sent a claim letter to Defendants on or around

February 28, 2012, which was accompanied by a draft complaint that was the basis for Plaintiff's

EEOC charge and federal complaint, Plaintiff's case was referred to Phillips & Associates, PLLC,

in or about March of 2012. *See id.* at 8. Plaintiff's case was filed with the EEOC on or about

April 2, 2012 with a sworn statement from Plaintiff. Thereafter, Plaintiff's complaint was filed on

March 19, 2013 with this Court. Plaintiff's complaint contained the following causes of action:

(1) Title VIII hostile work environment; (2) Title VII retaliation; (3) NYSHRL discrimination; (4)

NYSHRL retaliation; and (5) common law assault. *See* Dkt. No. 1.

On February 15, 2014, Defendants filed motions for summary judgment. In a September

16, 2014 Memorandum-Decision and Order, this Court granted Defendants' motions for summary

judgment as to each of Plaintiff's causes of action. Specifically, with respect to Plaintiff's hostile

work environment claims, the Court found as follows:

> Even if this action did not warrant dismissal under the exception in
> *Jeffreys*, the undisputed facts clearly show that Plaintiff has failed
> to produce sufficient evidence to demonstrate that the workplace
> was "'permeated with discriminatory intimidation, ridicule, and
> insult, that [was] sufficiently severe or pervasive to alter the
> conditions of [Plaintiff's] employment and create an abusive
> working environment.'" *Gorzynski*, 596 F.3d at 102 (quotation
> omitted). Even if the Court were to find that the environment was
> objectively hostile and abusive, which it does not, the evidence also
> makes clear that Plaintiff did not subjectively perceive the
> environment to be abusive. *See id.* (citation omitted); *Meritor
> Savings Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986) (indicating
> that the plaintiff's behavior may be considered in evaluating
> whether the conduct was unwelcome). Plaintiff has made only
> conclusory allegations, regarding sporadic incidents, many of which
> were not abusive and cannot be said to have occurred because of
> Plaintiff's sex.

*See* Dkt. No. 68 at 22. Further, the Court found that Plaintiff failed to make out a prima facie case of retaliation. The Court noted that Plaintiff's "contradictory and conclusory allegations regarding Defendant Rafizadeh's conduct towards her are almost entirely refuted by the evidence submitted by Defendants. Even assuming that Defendant Rafizadeh belittled, insulted and shouted at Plaintiff, the evidence submitted fails to demonstrate any causal connection between such actions and any alleged protected activity." *See* Dkt. No 68 at 25.

In regard to Plaintiff's email sent on February 8, 2014, the Court found that Plaintiff's argument that the email was simply a layperson attempting to settle her sexual harassment case on her own without the assistance of an attorney was entirely without merit. Specifically, the Court concluded:

> Plaintiff's argument that the "statements relating to water samples are never directly connected to any request for money" is at best disingenuous. Immediately following Plaintiff discussing the pictures of the dirty water samples and that she is prepared to send the pictures to all the state health departments and companies that Nirvana does business with, she then demands $5,000, that Defendants' not deny her unemployment benefits, and then issues the following threat: "I want that within on[e] week from today or this all goes public." Dkt. No. 38-2 at 3. Although Plaintiff may not be an attorney and does use the word "settlement" in the email, the quoted language is clearly a threat that she will go public with her pictures of dirty water samples unless she gets $5,000 and unemployment. Had Plaintiff not spent such a significant portion of the email discussing the pictures she has and all the ways that she can disseminate them, Plaintiff's interpretation may have been plausible.

On October 15, 2014, Defendant Mansur Rafizadeh requested leave to move for sanctions against Plaintiff and her counsel pursuant to Rule 11, Section 1927 and the Court's inherent power, arguing that the motivation behind Plaintiff's "abusive lawsuit," was not that " she believed she was sexually harassed," but rather that she "needed money after she left her job, and

wanted to punish her former employers for not paying her to keep silent."[2] *See* Dkt. No. 70-3. According to Defendant, Plaintiff had an improper purpose for this litigation, as evidenced by Plaintiff's February 9 email to blackmail Defendants with pictures of dirty water samples, and that the lawsuit and email illustrate a "single, integrated attempt at extorting a $5,000 payment" from Defendants. *See* Dkt. No. 72 at 9. Collectively, Defendant claims that Plaintiff's conduct is sanctionable for the following reasons: (1) Plaintiff's claim was brought in bad faith as part of an extortion scheme; (2) Plaintiff's claim did not have a colorable basis; and (3) Plaintiff's counsel's response to Defendant's notice of the motion for sanctions did not constitute a withdrawal of the offending claims under Rule 11. With respect to Plaintiff's counsel, Defendant argues that Plaintiff's counsel's conduct is likewise sanctionable because: (1) Plaintiff's counsel pursued the case without properly investigating; (2) Plaintiff's counsel continued litigating the claim even after becoming aware of its bad faith nature; and (3) Plaintiff's counsel abetted the bad faith claim by failing to disclose evidence. Defendant seeks relief in the form of a complete award of all attorney's fees for the litigation. *See* Dkt. No. 72 at 11.

### III. DISCUSSION

The central objective behind Rule 11 is the deterrence of "baseless filings in district courts." *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "Drawing a line between zealous advocacy and frivolous conduct, Rule11 provides a vehicle for sanctioning an attorney, a client, or both." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen*

---

[2] Defendant also seeks leave from the Court to submit Plaintiff's certificate of conviction. The Court grants this motion and will consider this evidence insofar as it is relevant to the pending motion for sanctions. It is assumed throughout this analysis that Plaintiff pleaded guilty to grand larceny in the fourth degree pursuant to Article 155.30 of the Penal Law. While extortion falls within the definition of grand larceny under Article 155.30, Plaintiff's certificate of conviction alleges no further facts other than Plaintiff's plea of guilty to grand larceny in the fourth degree.

*& Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1343 (2d Cir. 1991).  Specifically, Rule 11 provides as follows:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11.  "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness."  *Margo v. Weiss,* 213 F.3d 55, 65 (2d Cir. 2000) (citing *Calloway v. Marvel Entertainment Group*, F.2d 1452, 1469-70 (2d Cir. 1988)).

In analyzing a motion for sanctions pursuant to Rule 11, the district court is required to "avoid hindsight and resolve all doubts in favor of the signer."  *See Carrasquillo v. City of Troy,* No. 1:02–CV–01231, 2006 WL 304031, *4 (N.D.N.Y. Feb. 8, 2006) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)).  The imposition of sanctions upon a party is a discretionary decision for the district court, and must be exercised with caution.  *See Cerrone v. Cahill*, No. 95-CV-241, 2001 WL 1217186, *16 (N.D.N.Y. Sept. 28, 2001) (citing *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994)).  Accordingly, Rule 11 is violated only when "it is patently clear that a claim has absolutely no chance of success."  *Carrasquillo*, 2006 WL 304031 at *4 (internal citations omitted).

A federal court may impose sanctions against an offending party pursuant to its inherent power, which stems from the "'control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991) (quotation omitted). In order for a district court to impose sanctions pursuant to its inherent power, it must find that: "(1) the challenged claim was without a colorful basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (citing *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995)).

The district court may also rely upon Section 1927 as a basis for imposing sanctions. It is well established that the imposition of sanctions under Section 1927 requires "'a clear showing of bad faith on the part of an attorney.'" *Id.* at 336 (quotation omitted). "As with sanctions imposed pursuant to a court's inherent power, bad faith may be inferred . . . 'only if actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay.'" *Id.* (quotation omitted). Whereas sanctions imposed under Rule 11 and the district court's inherent power can be awarded against both an attorney or client, sanctions awarded pursuant to Section 1927 can only be imposed against an offending attorney. *See Oliveri*, 803 F.2d at 1273.

**A.      Timeliness of Defendant's Motion**

"[A] party moving for Rule 11 sanctions must do so in a filing 'made separately from any other motion." *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010); *see also* Fed. R. Civ. P. 11(c)(2). "Rule 11's safe harbor provision provides an opportunity to withdraw or correct a challenged submission by requiring initial service of the motion, but delays filing or presentation of the motion to the court for 21 days; filing of the motion is permitted 21 days after

service only if the challenged submission is not 'withdrawn or appropriately corrected.'" *In Re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) (quotation omitted). The purpose of the safe harbor provision is to "permit sanctions to be imposed on a party who has violated Rule 11(b) only after that party is provided with notice of the pleading defect and afforded an opportunity to correct or withdraw the defective filing." *Lawrence*, 620 F.3d at 159.

Plaintiff argues that "Defendants sent their safe harbor letter only after the motion for summary judgment was fully briefed and then moved for sanctions after the case was dismissed." *See* Dkt. No. 71 at 12. However, as Defendant correctly asserts, the motion was served in accordance with Rule 11's safe harbor provision. Plaintiff was served with Defendant's safe harbor letter in April of 2014. *See* Dkt. No. 70-4. The Court entered final judgment as to Defendant's motion for summary judgment on September 16, 2014. *See* Dkt. No. 68. As such, Defendant's motion for leave to file sanctions is timely. *See Patrizzi v. Bourne in Time, Inc.*, No. 11 Civ. 2386, 2013 WL 316148, *3 (S.D.N.Y. Jan. 28, 2013) (finding that a motion for leave to file Rule 11 sanctions was not untimely where it was filed five days after the court dismissed the claims because, "by the time it was filed with the Court, the proposed sanctions motion had long since been served on plaintiff's counsel"); *see also Chamber*s, 501 U.S. at 56 (holding that "even under Rule 11, sanctions may be imposed years after a judgment on the merits").

**B.     Motion for Sanctions Against Plaintiff's Counsel**

Rule 11 "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any filings with the court are well grounded in fact, legally tenable, and not 'interposed for any improper purpose.'" *Cooter & Gell*, 496 U.S. at 393 (quotation omitted). The reasonableness of an attorney's inquiry depends on the surrounding circumstances, including factors such as "how much time for investigation was available to the

signer; whether he had to rely on a client for information as to the facts underlying the pleading ...; or whether he depended on forwarding counsel or another member of the bar." *Hadges v. Yonkers Racing Corp*., 48 F.3d 1320, 1329 (2d Cir. 1995). Sanctions are appropriate against an attorney if a "factual allegation in a complaint, motion or other paper filed with the court has no evidentiary support ... unless there [is] a specific disclaimer that additional investigation is necessary." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (citation omitted). The allegations in question must be "utterly lacking in support" in order to be deemed sanctionable. *Id*. Rule 11 sanctions are not warranted where the "evidentiary support is merely weak and the claim is unlikely to prevail." *See Scientific Components Corp. v. Sirenza Microdevices, Inc*., No. 03-CV-1851 NGG, 2007 WL 1026411, *2 (E.D.N.Y. Mar. 30 2007). Further, the Second Circuit has repeatedly held that an attorney is "entitled to rely on the objectively reasonable representations of the client." *Id*.; *see also Calloway*, 854 F.2d at 1470. Thus, an attorney need not certify that the representations are "well grounded in fact," but rather that the "factual contentions have evidentiary support." *Hadges*, 48 F.3d at 1329-1330; Fed. R. Civ. P. 11(b); *see also Calloway*, 854 F.2d at 1470 (holding that when a claim is not supported by any evidence at any stage of the proceedings, sanctions are appropriate).

Here, Defendant argues that Plaintiff's counsel's conduct is sanctionable for the following reasons: (1) Plaintiff's counsel pursued the case without properly investigating; (2) Plaintiff's counsel continued litigating the claim even after becoming aware of its bad faith nature; and (3) Plaintiff's counsel abetted the bad faith claim by failing to disclose evidence. Defendant asserts that a reasonable inquiry conducted by Plaintiff's counsel "would have included careful evaluation of medical and testimonial evidence" to determine if Plaintiff experienced an actual injury, and an interview of "someone other than Plaintiff's best friend" to determine whether

anyone had witnessed sexual harassment against Plaintiff, before "representing that Plaintiff had been damaged in the amount of $2,003,042." Dkt. No. 70-3 at 13.

The Court disagrees with Defendant's argument that Plaintiff's counsel did not conduct a reasonable investigation under the circumstances. Several of the aforementioned factors indicating the reasonableness of an attorney's investigation into his or her client's claims weigh in favor of Plaintiff's counsel in this case. Plaintiff's counsel argues that he was entitled to rely on the investigation done by Plaintiff's first attorney, and the Court agrees. *See* Dkt. No. 71 at 21. Plaintiff's first attorney performed an investigation, obtained a written account from a witness, and drafted a complaint detailing "private interactions between Plaintiff and Defendant Rafizadeh." *Id.* As stated above, one factor to be taken into account in analyzing the reasonableness of an investigation is whether the attorney in question depended on information from previous counsel, and the Court finds that this factor weighs against sanctions.

Further, the Court finds that, due to the surrounding circumstances of this case, Plaintiff's counsel was permitted to rely on his client for the facts underlying the pleading. Defendant contends that Plaintiff's counsel's investigation was unreasonable in that Plaintiff's counsel relied almost exclusively on Plaintiff's testimony and, further, "they had not interviewed a single person who witnessed sexual harassment against their client. Had they had any contact with someone other than Plaintiff's best friend, whom the Court confirmed witnessed nothing actionable, they would have realized that no witnesses had witnessed anything actionable." *See* Dkt. No. 70-3 at 13. While this Court ultimately found that "Plaintiff relied almost exclusively on her own testimony to support her claims, that the testimony is both contradictory and incomplete, and that Plaintiff's testimony is contradicted by evidence in the record," Plaintiff's counsel presented a plausible theory for the reliance on Plaintiff's facts. *See* Dkt. No. 68 at 14. Plaintiff concedes that

"no witness exists other than the Plaintiff and Defendant for a majority of Plaintiff's allegations," and that "there are many cases which proceed to trial based solely on the testimony of the plaintiff because the acts complained of occurred only in the presence of one harasser and one victim." *See* Dkt. No. 71 at 20. In Defendant's Memorandum of Law, Defendant argues that there was "available evidence that contradicted Plaintiff's assertions" regarding her claims of sexual assault against Defendant Rafizadeh. However, while the available evidence cited by Defendant was sufficient to succeed on Defendant's motion for summary judgment, it does not follow that Plaintiff's counsel should be subject to sanctions for failing to corroborate the facts underlying Plaintiff's account through additional witnesses when, as Plaintiff's counsel suggests, Plaintiff could have been the only witness to the offenses alleged in this lawsuit.

Though Plaintiff's testimony, together with additional evidentiary support, was insufficient to survive Defendant's motion for summary judgment, the Court finds in the present motion that, given the nature of Plaintiff's claims and the potential inability to corroborate her version of events with testimony from witnesses, counsel's reliance on his client's testimony was reasonable.

The Court also finds that Plaintiff's counsel demonstrated a sufficient evidentiary basis to withstand a motion for sanctions. Defendant argues that Plaintiff's counsel should have engaged in additional discovery in this matter, such as subpoenaing a witness, interviewing present employees at Nirvana, or visiting the work site, and that Plaintiff's counsel's failure to do so should result in sanctions. However, through the course of this litigation, Plaintiff's counsel served three separate sets of document requests, a set of interrogatories, took Defendant Rafizadeh's and his brother's depositions, served subpoenas for phone records, and served HIPAA releases to Plaintiff's medical providers. *See* Dkt. No. 71 at 24. Further, "Plaintiff sought witnesses who would support her claims, albeit unsuccessfully." *Id*. Plaintiff's counsel relied

upon a written account from a witness and a documentary account produced by Plaintiff's first attorney, as well as medical documentation indicating that Plaintiff was subject to "emotional distress because of her employer."[3]  *See* Dkt. No. 71 at 16, 22.  While Defendant insists that Plaintiff could have obtained additional evidence, the relevant standards under Rule 11 do not require Plaintiff's counsel to conduct "exhaustive discovery."  *Scientific Components Corp.*, 2007 WL 1026411 at \*5; *see also Hochberg v. Howlett*, No. 92 CIV. 1822 (RPP), 1993 WL 33367, \*2 (S.D.N.Y. Feb. 4, 1993) (finding that "Rule 11 does not require that a plaintiff or her attorney drive down every avenue of inquiry").

Defendant also alleges that Plaintiff's counsel should be subject to sanctions because counsel became aware of the bad faith nature of Plaintiff's claim, but continued anyway.  *See* Dkt. No. 70-3 at 13.  Defendant notes that the "red flag" came when Plaintiff's counsel initially read Plaintiff's "extortionate" email to Defendants, which "triggered a need for heightened diligence to verify that their client was telling them the truth."  *Id*. at 15.  However, while the Court recognizes that Plaintiff's email might have brought into question Plaintiff's credibility, Plaintiff's counsel was not required to abandon the case simply because his client's credibility was impacted by an email that never directly disproved her allegations of sexual harassment.  This case is not one in which the attorneys, faced with misrepresentations by their client, failed to conduct any discovery whatsoever other than speaking to the client.  *See Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018 (5th Cir. 1994).  Rather, as Plaintiff's counsel correctly asserts, there was no direct evidence which refutes Plaintiff's claims of sexual harassment other than the testimony and

---

[3] In her Rule 26(a) disclosures, Plaintiff asserted emotional damages in the amount of $2,003,042.  Plaintiff's counsel maintains that this was never done in a writing, as would be required for a Rule 11 sanction, and the Court agrees.  *See* Dkt. No. 71 at 23.  After Defendants objected, Plaintiff's counsel deemed this amount excessive and instead sought "garden variety" damages due to Plaintiff's alleged emotional distress.  *See* Dkt. No. 70-5 at ¶ 4.

affidavits of individuals employed by Defendants as to her character and behavior in the workplace. *See* Dkt. No. 71 at 25.

Defendant contends that "Plaintiff's counsel was on notice of the fraud when provided with the extortionate email and blackmail pictures attached to the Answer in May of 2013." *See* Dkt. No. 72 at 11. That Plaintiff's counsel was on notice of the email's existence does not amount to knowledge of any misrepresentations made in regard to Plaintiff's claims for sexual harassment and discrimination. Rather, as Plaintiff's counsel states, he relied upon the evidentiary support accumulated in pretrial proceedings in making the determination that "the email, while certainly affecting Plaintiff's credibility, did not destroy it." *See id.* at 25; *see also Hadges*, 48 F.3d at 1329. Lastly, Defendant argues that Plaintiff's counsel abetted the bad faith claim by failing to disclose evidence. The Court disagrees. Defendant submitted a discovery request for access to Plaintiff's Facebook account, and contends that the account "was essential to Defendants' argument that the case deserved dismissal under *Jeffreys v. City of New York*." *See* Dkt. No. 70-3 at 20. Although Plaintiff's Facebook profile was not provided in its entirety upon Defendants' first request, upon filing a motion to compel, it was provided in its entirety. Thus, the Court finds that Plaintiff's counsel did not attempt to purposefully conceal evidence, and no prejudice resulted to Defendant, as the complete profile was eventually produced.

The Court finds that, though limited, the evidence relied upon in this case could have led Plaintiff's counsel to reasonably conclude that the facts supporting Plaintiff's claims might ultimately have been established. Based on the foregoing, sanctions against Plaintiff's counsel are not warranted. Alternatively, even if the Court were to find that counsel's conduct technically violated Rule 11, the Court would nevertheless, in its discretion, decline to impose sanctions in this case.

**C.     Motion for Sanctions against Plaintiff**

In order for a district court to impose sanctions pursuant to its inherent power, it must find that "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co.*, 194 F.3d at 336 (citations omitted).  "'[A] claim is entirely without color when it lacks any legal or factual basis'[,]" whereas a colorable claim "'has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.'" *Id.* at 337 (quotations omitted).  In analyzing whether sanctions against a represented party are warranted, the relevant inquiry is whether a reasonable plaintiff "could have concluded that the facts supporting the claim might be established, not whether such facts actually had been established." *Id.* (quotation omitted). "Finally, '[i]mposition of [financial] sanctions under a court's inherent powers requires a specific finding that [a party] acted in bad faith.'" *Truong v. Hung Thi Nguyen*, 503 Fed. Appx. 34, 36 (2d Cir. 2012) (quoting *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)).  "'A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings.'" *Id.* (quotation omitted).

In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Co.*, 596 F.3d 93, 102 (2d Cir. 2010) (quotation omitted).  "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* (citation omitted).

"To make out a prima facie case of retaliation under Title VII, a plaintiff must plausibly allege that: "'(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" *Gordon v. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (quotation omitted).

Here, Defendant argues that Plaintiff's claims lack a colorable basis because Plaintiff "did not have a reasonable belief that the facts she alleged actually happened." *See* Dkt. No. 70-3 at 9. To support this claim, Defendant cites Plaintiff's "numerous contradictions, her record of praising her job up until the moment she left, and the lack of a record of any mention of sexual harassment before her extortionate email of February 9, 2012." *Id.* Defendant further reasons that the lack of witnesses to any sexual harassment, combined with evidence that Plaintiff's coworkers witnessed her "exposing herself and comparing a man's genitals to a 'mini-bic lighter' on the job," highlight "just how unreasonable her complaint was." *Id.* Defendant also cites portions of this Court's summary judgment decision:

> As the court concluded in its opinion on summary judgment, Plaintiff's claims are insufficient as a matter of law ... In outlining her contradictions, the Court's decision tracks the necessary findings for a lack of colorable basis. Compare, e.g., "utterly devoid of a legal or factual basis," *Schlaifer Nance*, 194 F.3d at 337, with the Court's holding that Plaintiff's argument about her email were "entirely without merit."

Lastly, Defendant asserts that "above all, [Plaintiff's] claims are not colorable because they were coupled from the outset with an extortionate threat." *Id.*

In the present matter, the Court is unable to conclude that all of Plaintiff's claims entirely lacked a colorable basis. Defendant correctly states that this Court found Plaintiff's arguments

about her email as "entirely without merit." *See* Dkt. No. 70-3 at 9. However, Defendant is effectively conflating this Court's view on Plaintiff's arguments regarding her email and the Court's overall findings on Plaintiff's allegations in this lawsuit. The Court's view that Plaintiff's arguments regarding her email were without merit does not equate to an overall finding that each of her claims were entirely meritless. Further, that this Court ultimately found that Plaintiff's claims failed as a matter of law does not automatically warrant the conclusion that Plaintiff's claims also lacked a colorable basis. *See Schlaifer Nance*, 194 F.3d at 337 (holding that "judgment as a matter of law against a claim is a necessary, but not a sufficient, condition for a finding of a total lack of a colorable basis); *see also Petrello v. White*, No. CV 01-3082 DRH AKT, 2011 WL 8198105 (E.D.N.Y. Mar. 3, 2006) (finding that a summary judgment holding does not equate to a claim being meritless). Though deficient as a matter of law, Plaintiff's claims did have some legal and factual support. For example, Plaintiff sufficiently pled a colorable basis to state a claim under Title VII for a hostile work environment, even though Plaintiff was eventually unable to withstand dismissal at summary judgment. Plaintiff's complaint contained the following factual allegations:

> (1) Defendant would walk up behind Plaintiff and rub her arm, stroke her arm and slip her money;

> (2) Defendant grabbed her arm and "asked her 'do you like to suck it?'"

> (3)She complained about her harassment to her supervisor, who responded by sharing inappropriate jokes about her throughout the workplace;

> (4) Defendant touched her back, hand and arm and then would make her bend over so he could watch;

> (5) Defendant asked her to meet him in his bedroom where he felt her stomach and left his pants unbuttoned;

(6) When Plaintiff refused to engage in sex with Defendant, Defendant called her derogatory names and offered her money;

(7) She was forced to hide under her desk or behind a filing cabinet to avoid Defendant after his requests for dates; and

(8) Her experiences in the workplace caused emotional damage and sickness.

*See* Dkt. No. 71 at 17-18. Thus, Plaintiff's factual allegations, supported by her deposition testimony, and her overall belief that she was subject to a hostile work environment due to sexual harassment and her gender, provided a colorable basis for her claim.

As to Plaintiff's claim of retaliation under Title VII, Plaintiff pled that she "complained about her allegedly abusive treatment to her supervisor (protected activity and employer knowledge), was subject to additional ridicule (adverse employment action), and that the ridicule directly related to her complaint (causal connection)". *Id.* Defendant's main contentions, i.e. that Plaintiff's allegations were contradictory, that she brought these claims as part and parcel with an extortionate scheme, that her actions in praising the job to prospective employees indicated that she never perceived her work environment to be abusive, and the fact that her male co-workers testified in a manner indicating that Plaintiff participated in the very conduct she claims created the hostile work environment does not provide a sufficient basis to conclude that Plaintiff did not have a subjective belief in the facts underlying her pleading. Further, Plaintiff attempted, albeit unsuccessfully, to contact and obtain written statements or evidence from other witnesses listed support her claims. *See* Dkt. No. 71 at 27. Thus, the facts as they existed at the time Plaintiff filed the complaint give rise to the inference that Plaintiff could have believed that additional facts would be discovered in the discovery period to support Plaintiff's claims. *See United Artists Theatre Circuit, Inc. v. Sun Plaza Enter. Corp.*, 352 F. Supp. 2d 342, 355 (E.D.N.Y. 2005) (holding that sanctions were not warranted where facts existing at the time the complaint was

filed gave rise to a reasonable belief on the part of the plaintiff that additional facts could be discovered to support the claims).

The Court finds that Plaintiff's allegations were not utterly devoid of a legal or factual basis and, therefore, denies Defendant's motion for sanctions.

Even if the Court were to find that Plaintiff's claims lacked a colorable basis, which it does not, the second requirement in imposing sanctions pursuant to a court's inherent power is that the claim must be brought in bad faith, such that the actions taken by the plaintiff are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *See Schlaifer Nance*, 194 F.3d at 338. The Second Circuit has "interpreted the bad faith standard restrictively," and requires that the district court's factual findings of bad faith must be "characterized by a high degree of specificity." *See Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000); *see also Milltex Indus. Corp.*, 55 F.3d at 38 (2d Cir. 1995) (internal citations omitted).

Defendant argues that Plaintiff's lawsuit was brought in bad faith and with an improper purpose, and that when "blackmailing defendants with pictures did not work, she tried to make money with a fraudulent lawsuit." *See* Dkt. No. 70-3 at 8. Although the email may have been sent for an improper purpose, the Court cannot similarly conclude with the high degree of specificity required that Plaintiff's lawsuit was brought in bad faith. *Id.* Rather, the record indicates that, prior to commencing this lawsuit, Plaintiff sent an email including pictures of dirty water samples, threatened Defendants with going "public" with the pictures if she did not receive her employment and a settlement, and advised defendants that her lawyer was prepared to "sue for way more than 5000 for the treatment I endured while employed at Nirvana for almost 5 years." *See* Dkt. No. 38-2 at 2-3. The Court does not dispute the questionable nature of Plaintiff's

motives in sending this email. Nevertheless, the Court also recognizes that, at no point after the initial email was sent, or during the course of this lawsuit, did Plaintiff attempt to use the dirty water samples or similar arguments in an attempt to gain settlement. Further, in Plaintiff's response to Defendant's motion for summary judgment, Plaintiff "clarified that the water quality issue had nothing to do with Plaintiff's sexual harassment and discrimination claims and that Plaintiff did not intend to introduce anything related to water quality at trial." *See* Dkt. No. 71.

Based on the foregoing, and in light of the lack of any specific evidence indicating the absence of Plaintiff's genuine belief in the validity of this action, the Court concludes that the record cannot support an inference of bad faith on the part of Plaintiff.

Alternatively, even if the Court found that Plaintiff acted in bad faith and had no colorable basis for her claims, the Court would decline to award monetary sanctions. As detailed in the discovery provided in support and opposition to the motion for summary judgment, Plaintiff's financial circumstances would make such an award inappropriate. *See Truong*, 503 Fed. Appx. at 36 (holding that the court must take into consideration the financial circumstances of the plaintiff when determining if it should award the prevailing defendant attorney's fees) (quotation omitted).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's letter motion seeking leave to file Plaintiff's certificate of conviction (Dkt. No. 76) is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for sanctions (Dkt. No. 70) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 28, 2015
      Albany, New York

Mae A. D'Agostino
U.S. District Judge